### STURGIS v. FRANKLIN OIL HEATING, Inc.
### No. 1099.

District Court, S. D. Ohio, E. D.
Jan. 21, 1939.

Rehearing Denied April 6, 1939.

Fred Gerlach and Norman Gerlach, both of Chicago, Ill., for plaintiff.

Thomas H. Sheridan (of Sheridan, Davis & Cargill), of Chicago, Ill., for defendant.

NEVIN, District Judge.

This is a suit under the patent laws of the United States. The patent in suit is No. 1,840,137 issued January 5, 1932 to William B. Sturgis. It is owned by plaintiff. It is for an "Oil Burner". The patent contains a number of claims but, of these, only claim 4 is in issue. In his Bill of Complaint, plaintiff charges infringement by defendant and prays for an injunction and an accounting.

In a Bill of Particulars filed September 24, 1934, plaintiff states, inter alia, that: "(b) The oil burners which plaintiff alleges constitute an infringement of Claim 4 of Letters Patent No. 1,840,137 correspond in general design and construction to the following illustration and are those which are of the premixing type and employ a central tube having in the lower portion thereof an annular series of downwardly and outwardly inclined holes for jetting streams of air downwards toward the receptacle bottom."

The "illustration", above mentioned, refers to an Oil Burner manufactured by defendant and known in this case as defendant's Model H. Such a burner was utilized in tests during the trial and is in evidence as defendant's Exhibit U.

In its answer, defendant challenges the validity of the patent and denies infringement, and in this connection alleges not only that the device described in the letters patent, and particularly claim 4 thereof, was patented and described in printed publications more than two years prior to the application for the patent in suit, but that the letters patent, and particularly claim 4, are null and void for the reason that the claim does not set forth an operative or useful machine or device which can be put into practical use; that the patent in suit is a mere "paper patent", and further that the letters patent, and particularly claim 4, were "so restricted and limited by the proceedings in the Patent Office prior to the issuance of said Letters Patent, that said Letters Patent, and particularly claim 4 thereof, if valid at all, is not entitled to any construction which will include or cover any devices made or sold by this defendant".

Patentee states in his patent that: "The present invention relates generally to oil burners for use in connection with boilers and similar heating apparatus. More particularly the invention relates to that type of oil burner which is known as a vaporizing burner of the 'premixing' type and comprises a cylindrically shaped pot having an open top, a pipe for delivering oil over the bottom of the pot, and a perforated tube which is positioned centrally with respect to the continuous side wall of the pot and is adapted to receive air at its lower end and to deliver a portion of the air into the pot for oil vaporizing purposes and the remainder of the air across the top of the pot to cause combustion of the vaporized oil."

Claim 4 reads as follows: "4. An inherently stable vaporizing burner of the premixing type comprising in combination, a pot consisting of a continuous substantially imperforate side wall and a bottom, means to prevent the pot from becoming overheated, means for maintaining a layer of liquid fuel over the bottom of the pot, an upstanding tube positioned centrally in the pot and having its lower end opening through said pot to receive air, said tube forming with the side wall of the pot a vaporizing and aerating chamber for the fuel and having a plurality of spaced openings therein of such total area as to jet into the chamber not over forty-five per cent by volume of the total air theoretically required for the complete combustion of the fuel, some of which openings, but not all, facing downwardly in such a manner that the jets of air issuing therefrom, when the burner is in full operation, act by their cooling effect to prevent a further increase in vaporization thereby making the burner inherently stable, and means for discharging more than fifty-five per cent by volume of the total air theoretically required for the complete combustion of the fuel across and above the upper end of the chamber to support combustion of the vaporized and aerated fuel above the top of the pot."

During the oral argument of the case, after the conclusion of all of the evidence

and after the briefs of counsel had been filed, the following statements were made, as appears of record:

"Mr. Fred Gerlach (of counsel for plaintiff): The main feature of the patent of claim 4 of the patent in suit is the provision of the outwardly and downwardly inclined holes which produce jets of air which are deflected over the oil so that the vapor sweeps over it and produces a cooling effect.

"The Court: That is described, is it, by this language here: '* * * and having a plurality of spaced openings therein'—

"Mr. Gerlach: Of claim 4.

"The Court: 'Of such total area as to jet into the chamber not over 45 per cent by volume of the total air theoretically required for the complete combustion of the fuel, some of which openings, but not all, facing downwardly in such a manner that the jets of air issuing therefrom, when the burner is in full operation, act by their cooling effect to prevent a further increase in vaporization', and so forth. The opening here you are referring to are those openings which face downwardly in such a manner that the jets of air issuing therefrom act by their cooling effect to prevent a further vaporization.

"Mr. Gerlach: Yes.

"The Court: That is what I understand you claim is the essential part of this invention?

"Mr. Gerlach: That was the element introduced in this type of burner.

"The Court: Which constitutes really the invention in this particular instance?

"Mr. Gerlach: Yes. You might put it this way. The invention consisted of this type of burner with holes for producing that effect.

"The Court: That is, that type of burner now was old?

"Mr. Gerlach: Yes, that type of burner was old.

"The Court: But this type of burner with holes for producing that cooling effect was not old?

"Mr. Gerlach: Yes.

"The Court: Now we take the type of burner concededly old, I understand?

"Mr. Gerlach: Yes.

"The Court: And the patentee in this instance, Mr. Sturgis, conceived the idea of putting in that burner which was well-known the holes in such a manner—

"Mr. Gerlach: In such a manner so arranged.

"The Court: Such a relationship as that they face downwardly in such a manner that the jets of air issuing therefrom when the burner is in full operation, act by their cooling effect to prevent a further increase in vaporization and that is the conception that forms the invention?

"Mr. Gerlach: That is the distinguishing attribute of the combination claimed.

"The Court: That is the invention, in other words, the thing that he conceived that was new, that constitutes the invention in this instance?

"Mr. Gerlach: Yes.

"The Court: The reason I asked you that is that it makes it easy to understand just what was claimed was the invention, the novel feature, the thing that is new, and simplifies the matter very much for the Court and counsel.

"Mr. Gerlach: That is the feature which characterized this invention and that is the feature which we say produced a better, different, or new result in this type of burner.

"The Court: When you say 'this type of burner' you mean the burner with the tube up the middle and sidewalls and bottom, and with the secondary air at the top, and all those things that were known and in use?

"Mr. Gerlach: Yes.

"The Court: And we do not need to concern ourselves about that insofar as this device is concerned, excepting that taking that the patentee in this case applied this new idea and produced what is now, of course, as you claim, a new burner because this integral part has been added."

* * * * * *

"The Court (inquiring of Mr. Sheridan, of counsel for defendant): What do you understand by inherent stability?

"Mr. Sheridan: I will be glad to answer that at this time. I think the term is self-definitive. It would mean just what Sturgis meant it to mean when he brought it into the patent office. It means automatic stability.

"Mr. Breeze, in defining the term for Your Honor, contrasted stability, which, of course, we concede is present in our burner, with inherent stability, with the analogy of a pencil which he said if carefully poised on one end so that it would re-

main standing had stability in that position, whereas if it were suspended by a string it would inevitably come back to a vertical position, and that was inherent stability. That was a very fair and easily understood analysis.

"We do not need to go to our own minds for a definition of this. I will take Your Honor to the file wrapper of the patent in suit. If you will turn to the photostatic copy of Exhibit EE, I think it is Exhibit EE, you will notice that the pages are marked in pencil.

"The Court: Exhibit FF.

"Mr. Sheridan: Yes, you will note at the bottom of each photostatic page there is a pencil number. Those are carried through in sequence. If Your Honor will turn to page 91, I think it is, and bear in mind at this time late in the prosecution of this application, a long time after it was filed, and for the first time, and with full knowledge, as this record brings out, of the defendant's burner by plaintiff, plaintiff has taken over personally the prosecution of his application for this patent in suit and he says: 'I can readily understand, however' —I think that starts on page 90, it is the second paragraph of that amendment of November 7th, 1931, the second sentence in the second paragraph. The paragraph starts 'May I say at this time, sir, that it is an inexpressable disappointment to me that the Claim Nos. 24, 25 and 27 did not merit your entire confidence. I can readily understand, however, in the light of your able criticisms and correct citations of the prior art that they do not properly disclose the important fact of an entirely new and inestimably valuable result, one which has never been found in any other burner in the prior art and in no other burner today, that of inherent stability, regardless of all boiler and furnace conditions—in fact, regardless of all extraneous heating conditions. This inherent stability is obtained and retained by means of my construction which was so inadequately defined in these claims.'

"Then we skip the next paragraph and go down to the middle of the following paragraph after he has referred to having submitted this to a number of men important in the art, and he says: ' * * * and they all unanimously agree in stating unequivocally that this basic feature of my burner—inherent stability—is drastically new in the art and of supreme importance. They further unhesitatingly state that there has never been in all the history of the industry, and there is no other burner even today, (three and one-half years since the filing of my application) which contains this startling new feature of inherent stability.'

"I shall revert to it again under the discussion of infringement.

"At that time this plaintiff knew of defendant's burners and has said so in this proceeding. Still he tells the patent office there is no other such burner on the market today at that time. That is the fact. Ours is not an inherently stable burner.

"Continuing again, and skipping over:

" 'It is now believed from a long and comprehensive study of the prior art that these claims duly define a positively new result,—an inherently stable burner.

" 'In order to facilitate your visualization of this new result, permit me, sir',— and here comes the definition:

" ' * * * to say that I mean a burner which controls itself according to the air supplied and it is absolutely independent of the oil adjustment just so long as substantially the entire bottom of the pot is covered with oil. I also mean by an inherently stable burner one which (as shipped from the factory), is stable and controls itself regardless of the type or condition of the furnace or boiler in which it is to be installed.'

"And it is because of that language that I asked our witnesses if that was a true definition and description of the defendant's burner charged to infringe and they said absolutely not, that that was a dream which they had hoped for in reference to their burners, that they could take the burners which came from the factory and set them up without worrying about adjustments or anything else, that they could take their burners and slap them right into installation, that is inherent stability, and it is the ability to regulate automatically the oil to meet the air supply. That is the first time that was ever mentioned in the prosecution of the application for the patent in suit. So that is new matter. Their case turns on this. Mr. Gerlach has admitted the germ of the invention defined is that cooling effect of the downturned air jets, and the claim itself makes it clear that it is the indissoluble link to inherent stability which we do not have."

It seems apparent that, as claimed by defendant, plaintiff's patent, at least in

so far as claim 4 in suit is concerned, is tied to the alleged inherent stability. Even if, and assuming that, plaintiff's patent is valid, it must definitely be limited to read upon and cover only an inherently stable burner, and more specifically one in which that alleged inherent stability is obtained by the cooling effect of the down-turned primary air jets. The downwardly facing air jets in defendant's burner not only do not contribute inherent stability in normal operation, but they do not function to cool the oil or oil vapor, both of which are required by claim 4.

Again, as claimed by defendant, the means for discharging more than 55% by volume of the air theoretically required for complete combustion of the fuel across and above the upper end of the retort to support combustion of the vaporized fuel is wholly lacking in defendant's burner and there is no proof to show the proportions of primary and secondary air delivered in defendant's burner as specified in claim 4.

As more specifically set out in its findings and conclusions, the court is of opinion, from a consideration of the whole of the record and the briefs and arguments of counsel, that defendant's device does not infringe claim 4 of plaintiff's patent in suit. The burden of proving such infringement is upon plaintiff. He has failed to discharge this burden resting upon him.

Much of the time at the trial and considerable portions of the record and briefs of counsel are devoted to the question of the validity of the patent, but, in view of its conclusion just stated to the effect that there is no infringement shown in the instant case, it is unnecessary for the court to, and it does not, pass upon the question of validity. As stated by the court in Harris v. Ladd, 8 Cir., 34 F.2d 761, 764 "our conclusion is that even conceding the validity of plaintiff's patent, the accused device of defendant does not infringe".

Based upon a consideration of the whole of the record, however, the court has arrived at the following:

### Findings of Fact.

1. Plaintiff is the owner of letters patent No. 1,840,137, granted January 5, 1932, to plaintiff, William B. Sturgis, which is the patent in suit.

2. Only claim 4 of the patent in suit is relied on by plaintiff and is the only claim in issue herein.

3. The oil burner illustrated and described in the patent in suit is a vaporizing burner of the premixing type in which primary air is delivered into a pot or chamber wherein the fuel is vaporized by radiant heat before secondary air is delivered to the vaporized fuel for producing combustion. The burner comprises a pot with a side-wall and a bottom on which a pool of oil is maintained, and an upstanding air distributing tube positioned centrally in the pot. The lower openings in the tube deliver air known as "primary" into the pot for aerating the fuel-vapor and the remainder of the air, known as "secondary," is delivered across and above the top of the pot to cause combustion of the aerated fuel-vapor above the top of the pot. In normal operation a pool of oil is maintained on the bottom of the pot which makes the burner a "wet bottom" type. The radiant heat from the flame above the pot vaporizes the oil in the vaporizing chamber. There is always an excess of this radiant heat generated over and above the amount required for effecting the proper rate of vaporization. Unless means are provided to prevent this excess of radiant heat from acting on the pool of oil, the rate of vaporization may continue to build up indefinitely until there is no longer a pool of oil on the bottom. Continuous building up produces smoke, and carbon accumulates in the pot. To avoid producing combustion in the pot during normal operation the primary air must not exceed 45% of the total required theoretically for the complete combustion of the fuel and the secondary air must be not less than 55% of the total theoretically required for complete combustion.

4. The characterizing feature of the oil burner embodying the combination of Claim 4 of the patent in suit, resides in the delivery of cool air from the lowermost row of primary air holes in the central tube downwardly in such a manner that the air-jets issuing therefrom when the burner is in full operation, act, by their cooling effect, to prevent a further increase in vaporization and to produce inherent stability.

5. The down-turned primary air jets in defendant's model H burner charged to infringe do not exert a cooling effect in normal operation of the burner.

6. Defendant's model H burner is not inherently stable.

7. Defendant's model H burner uses no asbestos members or any equivalent means to prevent the overheating of the retort in normal operation.

8. In defendant's model H burner charged to infringe, a substantial proportion of the secondary air for combustion is delivered from the periphery of the retort upwardly but not across the upper end of the retort, and that burner, in normal operation, does not deliver more than 55% of the total air theoretically required for combustion, across and above the upper end of the chamber or retort.

### Conclusions of Law.

1. Defendant's device, its model H burner, does not infringe claim 4 of the patent in suit.

2. Plaintiff has failed to discharge the burden of proof imposed upon him to establish infringement.

3. For the purposes of this decision the court assumes the validity of the patent in suit, and claim 4 thereof, but does not pass upon or decide that question.

4. Defendant is entitled to be hence dismissed with its costs as prayed for in its answer.

Decree accordingly.

### On Petition for Rehearing.

This cause coming on to be heard on the petition for rehearing heretofore, to-wit: on March 10, 1939, filed herein, the court upon consideration thereof finds said petition not well taken and that the prayer thereof should be denied.

Wherefore, it is by the court ordered that a rehearing be and it is denied, to which ruling of the court plaintiff, by his counsel, excepts.